Bichakdson, J.,
delivered the opinion of the court:
The claimant alleges, in effect, that he held and still holds the office of major-general on the retired list of the Army, and that Congress has undertaken, by legislative enacment, to remove him from that office and to appoint him to the office of brigadier-general on the retired list. This, he contends, they *158 have no constitutional power to do, and he seeks to recover the differeúce between the salary of a major-general and that of a brigadier-general, which last has been paid to him.
He held the office of colonel of cavalry in the line of the Army of the United States on the active list when Congress passed the Act July 28, 1866 (14 Stat. L., 337, ch. 299), the thirty-second section of which was as follows:
“ Sec. 32. That officers of the Regular Army entitled to be retired on account of. disability occasioned by wounds received in battle may be retired upon the full rank of the command held by them, whether in the regular or volunteer service, at the time such wounds were received.”
The claimant was wounded in battle while in command of a division of the Army, that being the command of an officer of the rank of major-general. In the year 1868 he was ordered before a retiring board of officers, in accordance with the provisions of law which now form sections 1245-1251 of the Revised Statutes. On the 24th of February of that year the retiring board made the following report, which was approved by the President:
£<The board is of the opinion that Brevet Maj. Gen. Thomas J. Wood, colonel Second United States Cavalry, is incapacitated for active service, and that said incapacity is the result of three ' wounds received in battle in the line of his duty while commanding a division of troops in the service of the United States.”
In pursuance of the provisions of the act of 1866 already cited, and this report of the retiring board, the claimant was retired by direction of the President on the 9th of June, 1868, with the full rank of major-general.
In order to a correct decision of the issue involved in this case, we must first consider what is the difference between office and rank, and must then determine what office the claimant held when thus retired.
The titles or names of the offices to which general and line officers of the Army are appointed — general, lieutenant-general, major-general, brigadier-general, colonel of cavalry or infantry, lieutenant-colonel, major, captain, and lieutenant — are employed also as the designation of rank for both the line and the staff, and when no other rank is conferred upon general and • line officers the titles of their respective offices also express their *159 rank. But it does not follow that rank and office are therefore always identical, and in point of fact they are not so.
Bank is often used to express something different from office. It then becomes a designation or title of honor,, dignity, or distinction conferred upon an officer in ordér to fix his relative position with reference to other officers in matters of privilege, precedence, and sometimes of command, or by which to determine his pay and emoluments. This is the case with the staff-officers of the Army. Section 1131 of the Bevised Statutes provides that there shall be five inspectors-g'eneral, with the rank of colonel of cavalry. The office thus provided for is inspector-general, and not colonel of cavalry. The latter is a designation with entirely different legal effect from that which the same words express when used to describe an office; that is to say, he receives the pay and is entitled to the dignity, but has not the office, with its command and other duties, of a colonel of cavalry. In the same manner 'the Judge-Advocate-General has the rank of brigadier-general (Rev. Stat., § 1198), and chaplains have the rank of captains of infantry. (Rev. Stat., § 1122.) The Adjutant-General has the rank of brigadier-general, and the assistant adjutant-generals the rank of colonel, lieutenant-colonel, or major of cavalry. (Rev. Stat., § 1128.) So with officers of the Quartermaster’s Department and the Medical Department, who have rank attached to, but separate and distinct from, their office. (Rev. Stat., §§ 1132, 1168.)
The distinction between rank and office is thus more clearly apparent with reference to staff officers than to officers of the line, because in the latter case the words used to designate the rank and the office are usually the same, while in the former case they are always different.
In some cases officers of the line have a rank assigned to them different from that of the title of their office. The Bevised Statutes, in section 1096, provide that the General may select from, the Army such number of aids, not exceeding six, as he may deem necessary, who shall have, while serving on his staff, the rank of colonel of cavalry. By section 1097, the Lieutenant-General may select from the Army two aids and one military secretary, who shall have the rank of lieutenant-colonel of cavalry while serving on his staff. These selections may be, and usually are, made from among officers whose rank is raised to a higher degree by the- service assigned to them. A captain of infantry *160 in the line of the Army may thus be made to rank, temporarily, as a colonel of cavalry. That the new rank thus conferred is not a new office is conclusively shown by the fact that it is acquired by a selection or appointment, if it may be so called, made by the General of the Army, and the Constitution does not permit the power of appointment to office to be vested in the General of the Army. (United States v. Germaine, 99 U. S., 503; Collins's Case, 14 C. Cls. R., 568, and ante, 22.)
The pay of officers on the retired list of the Army is determined by the rank upon which they are retired (Rev. Stat., § 1274), and all officers, whether on the active or retired list, are paid according to their rank, except in the case of chaplains, who, under the designation or title of their office, are paid a lower rate than is allowed to other officers of the same rank. (Rev. Stat., § 1261.)
By the laws governing the Navy,* unlike those respecting the Army, the pay of staff officers is fixed generally according to, and by the designation or title of, the offices held by them, and does not depend upon their rank; so that the rank of staff officers of the Navy is usually.operative only in determining the relation of the different officers in the service to each other, in matters of precedence, privileges, and the like, and is generally-called relative rank. (Rev. Stat., §§ 1471-1488, 1556.)
Grade is a step or degree in either office or rank, and has reference to the divisions of the one or the other or both, according to the connection in which the word is employed.
Thus, section 1129 of the Revised Statntes provides that all vacancies in the grade of major, in the Adjutant-General’s Department, shall, when filled, be filled by selection from captains of the Army. In that department the grade of major is the rank of the thirteen assistant adjutant-generals of the lowest rank; and therefore grade there refers to rank. Section 1168 provides that all original vacancies in the grade of assistant surgeons shall be filled by selection, by examination, from among the persons who have served as staff or regimental surgeons of volunteers in the Army of the United States during the late war; and in that section grade refers to office, as no rank is mentioned.
By Revised Statutes, section 1094, officers on the retired list of the Army compose part of the Army of the United States,. *161 and therefore no one can be upon that list who is not an officer appointed as required by the Constitution, Art. 2, § 2. But being such officer, thus appointed, of any grade on the active list, be may be retired with a rank higher or lower than that, which belongs to his office whenever Congress sees fit so to provide. Congress cannot appoint him to a new and different office, because the Constitution vests the appointing power in the President with the advice of the Senate, or in certain cases in the President alone, the heads of the executive departments, or the courts of law; but Congress may transfer him to the retired list, and may change his rank and pay at any time, without coming in conflict with that provision of the Constitution.
Congress has frequently exercised the power of changing the mere rank of officers without invoking the constitutional power of the Executive to appoint the incumbents to new offices. But when it has been the purpose to place on the retired list one who has been discharged from service, who no longer holds a.n office in the Army, Congress has provided for his restoration or reappointment in the manner pointed out by the Constitution, generally by the President alone, and then has authorized his retirement. Such was the case of Major Collins. (14 C. Cls. R., 568, and 15 C. Cls. R., 22.) In some cases Congress has provided for the appointment, in the constitutional manner, of an officer upon his retirement, to a higher grade of office than that which he held on the active list. (Act June 26, 1876, 19 Stat. L., 60, ch. 114.)
In the present case, the claimant being a colonel in the line of the Army, his retirement 'with the rank of major-general, under the act authorizing it, did not confer upon him a new office, and, therefore, did not make him a major-general. He remained a colonel of cavalry, to which office he had been duly appointed, and he acquired only new and higher rank by the act of Congress authorizing his retirement. It was within the legislative power of Congress, under the Constitution, to change his rank at any time, and this they did by the Act March 3, 1875 (18 Stat. L., 512, ch. 178, § 2), wherein it is provided that “all officers of the Army who have been heretofore retired by reason of disability arising from wounds received in action shall be considered as retired upon the actual rank held by them, whether in the regular or volunteer service, at the time when such wound was received, and shall be borne on the retired list *162 and receive pay thereafter accordingly.” This reduced the rank of the claimant on the retired list from that of major-general to that of brigadier-general, which was the rank held by him in the volunteer service at the time when his wound was received, but left him still in the office of colonel of cavalry.
The order of the War Department of March 23, 1875, which styles the claimant “brigadier-general,” “formerly major-general,” refers, by those designations, only to his rank, and not to his office. His rank was all the order was dealing with, and it had no reference to official appointment.
It is alleged on the part of the claimant, as before stated, that Congress undertook to remove him from the office of major-general and to appoint him to the office of brigadier-general, which they have no constitutional power todo, and it is claimed that he is still a major-general, and entitled to be paid as such. But we have shown that the claimant was not appointed to the office of major-general; that he still retained, on the retired list, the office of colonel of cavalry; that the rank which was conferred upon him by act of Congress upon his retirement was in no sense a constitutional appointment to a new office; and that the same power which gave him that rank could take it away. His rank having been reduced from that of major-general to that of brigadier-general, his retired pay, which is controlled by rank, is reduced accordingly. As he has already been paid the salary of his rank, his petition must be dismissed.