Richardson, J.,
delivered the opinion of the court:
The claimant entered the military service of the United States, as an enlisted man in the Army, December 26, 1861; was appointed lieutenant of infantry on the 25th day of May, 1864; was placed on the retired list December 15,1870, with the rank of captain of infantry; and has thus been in continuous service from his first entry up to the time of bringing this action.
He sues for pay which he alleges has accrued to him as a retired officer beyond that which has been allowed and paid to him at the treasury.
We must therefore determine what is the pay, by law, of a retired officer of the Army of the claimant’s rank, and how it is to be computed.
Section 1274 of the Revised Statutes is as follows:
“ Officers retired from active service shall receive seventy-five per centum of the pay of the rank upon which they are retired.”
*232 The rank upon, which the claimant is retired is that of captain of infantry, designated in the pay section of the statutes as captain not mounted.
The pay attached to rank in the Army depends upon length of service.
For the first five years it is a fixed sum, as set forth in Eevised Statutes, § 1261. It is increased at the end of each five years of service, under the following sections of the statutes:
Eevised Statutes, § 1262:
“There shall be allowed and paid to each commissioned officer below the rank of brigadier-general, including chaplains, and others having assimilated rank or pay, ten per centum of their current yearly pay for each term of five years of service.”
Eevised Statutes, § 1263:
“The total amount of such increase for length of service shall in no case exceed forty per centum on the yearly pay of tlie grade as provided by law.”
Eevised Statutes, § 1267:
“In no case shall the pay of a colonel exceed four thousand five hundred dollars a year, or the pay of a lieutenant-colonel exceed four thousand dollars a year.”
Section 7, act of 1878, June 18, ch. 263:
“That on and after the passage of this act all officers of the Army of the United States who have served as officers in the volunteer forces during the war of the rebellion, or as enlisted men in the armies of the United States, regular or volunteer, shall be, and are hereby, credited with the full time they may have served as such officers and as enlisted men in computing their service for longevity pay and retirement. And the retired list shall hereafter be limited to four hundred, in lieu of the number now fixed by law.”
Notwithstanding the claimant has been in the Army continuously since December 26,1861, a period of more than fifteen and less than twenty years, embracing three terms of five years’ service each, the defendants contend that he is entitled to seventy-five per cent, of the pay of the rank of captain unmounted, upon which he is retired, allowed by law to an officer of that rank who has served one, and only one, period of five years.
This they do on two grounds:
First, that the closing words of section 1871 of the Eevised Statutes, viz, “upon which they are retired,” qualify the pre *233 vious word “pay,” so as to limit tbe annual pay of a retired officer for tbe rest of bis life to that sum wbicb be first became entitled to at tbe very point of time when be was retired.
We are unable to concur in sucb a construction. It is in conflict with tbe obvious and grammatical connection of tbe language of tbe section, and is not in accord with tbe manifest purpose for wbicb tbe words “upon wbicb they are retired” were added. Those words plainly qualify tbe word “ rank,” immediately preceding them, and thus specifically define tbe rank, and notbing more, wbicb shall control, for tbe time being, tbe pay of retired officers.
All officers of tbe Army, whether on tbe active or retired list, with tbe single exception of chaplains, so far as we have observed, are paid according to their rank. (Wood’s Case, 15 C. Cls. R.,151.) But officers sometimes have more than one rank — tbe rank attached to and incident to their office, and tbe rank specifically conferred under tbe law, wbicb is independent of office, and is, as stated in Wood’s Case, a “ designation or title of honor, dignity, or distinction conferred upon an officer in order to fix bis relative position with reference to other officers in matters of privilege, precedence, and sometimes of command, or by wbicb to determine bis pay or emoluments.”
The Act July 28, 1866 (14 Stat. L., 337, ch. 299), since altered (Rev. Stat., § 1254), provided:
“ Sec. 32. That all officers of tbe Regular Army entitled to be retired on account of disability occasioned by wounds received in battle may be retired upon the full rank of tbe command held by them, whether in the regular or volunteer service, at tbe time sucb wounds were received.”
Under this act, while it was in force, tbe claimant, who, by appointment and commission, was a lieutenant in tbe Army, bolding tbe office of lieutenant, with rank of lieutenant attached, was retired with tbe higher rank of captain.
In order to avoid any ambiguity or uncertainty as to wbicb rank, in cases of that kind, as well as in some other cases, it was intended should govern tbe pay of retired officers, certain qualifying words seem to have been added, specifying that it should be tbe “rank upon wbicb they are retired,” that is, tbe rank wbicb they bold from time to time on tbe retired list, and wbicb is to regulate their pay.
*234 This does not necessarily refer to tlie rank which they held at the time of retirement any more than it refers to the pay at the time of retirement, for the rank of officers on the retired list has been many times changed in particular cases; and we held in Wood’s Case that Congress has the power to change the mere rank of officers without the necessity, under the Constitution, of a new appointment and new commission, and that pay follows and is governed by rank alone.
Thus there is nothing in section 1274 of the Revised Statutes to preclude the claimant from having his pay computed precisely as is that of an officer of his rank on the active list, subject only to the reduction of one-fourth part, as there provided.
Second. The defendants further contend that officers on the retired list are not entitled to the longevity pay allowed by section 1262 of the Revised Statutes, except for the periods of five years in which they were in the active service; that when they are placed on the retired list they cease tobe in service, and so the periods therein specified cease to run.
We deem this to be an entire departure from the true meaning of the section.
The statute gives to each commissioned officer below the rank of brigadier-general additional pay for each term of five years’ service; that is, service as a commissioned officer in the Regular Army, excluding only service in any other capacity, such as that of an officer in the volunteer service and that of a non-commissioned officer or enlisted man.
It is upon this construction that the term of service of cadets at the Military Academy has never been reckoned for longevity pay, because they are not commissioned officers. It is upon this construction that the service which an officer performed as a private or as an officer in the volunteer forces during the rebellion was excluded from the computation of service, until Congress passed the act of 1878, June 18, ch. 263, above cited, which expressly authorized such service to be credited to them.
The construction which the defendants urge would place retired officers wholly out of the service. That is certainly not the intention of the law, either expressed or implied. Section 1245 of the Revised Statutes makes a distinction between officers retired from active service only and officers wholly retired, which implies that the former remain in service, though not in *235 active service, while the latter are out of the Army altogether. This is the provision:
“When any officer has become incapable of performing the duties of his office, he shall be either retired from active service or wholly retired from the service, by the President, as hereinafter provided.”
The same distinction is made in sections 1252, 1275. So wherever in the statutes active service is meant, the word “active” is invariably inserted to qualify “service.” (Rev. Stat., §§ 1243-1245, 1249,1251-1257, 1274.)
In the section now under consideration the word “ active” is not used, and the word “service” is left unqualified, to receive its usual and natural interpretation.
Officers on the retired list still remain in the service. They hold commissions as officers of the Army, and by section 1094 of the Eevised Statues they are expressly designated as among those of whom the Army of the United States shall consist. It is true that they are generally exempt from active service. But they may be assigned to duty at the Soldiers’ Home (Eev. Stat., § 1259), and they are specially subject to many provisions of law which are imposed upon them for the very reason that they are in service as officers of the Army. By Eevised Statutes, section 1256, they are entitled to wear the uniform of the rank on which they are retired; their names are continued on the Army Eegister; and they are made “ subject to the Eules and Articles of War, and to trial by general court-martial for any breach thereof.”
The sixty-first article of war provides that “any officer who is convicted of misconduct unbecoming an officer or a gentleman shall be dismissed from the service.” There is no doubt that officers may be dismissed from the retired list under this article, and in the point of fact retired officers have been so dismissed. That could not be the case unless they are held to be in the service.
By section 1223 of the Eevised Statutes, retired officers, like all other officers of the Army, are prohibited from holding any appointment in the diplomatic or consular service of the government, on the pain of being held to have resigned their places in the Army.
Besides, being officers in the Army, Congress can at any time *236 impose upon them special duties, wliicb they would be forced to perform.
These citations and illustrations are sufficient to show that officers do no.t cease to be in service by the mere fact of being placed on the retired list and relieved from active duties.
The language of section 1262 of the Revised Statutes, allowing longevity pay to each commissioned officer below the rank of brigadier-general, is broad enough to include the claimant, and to confer upon him the full benefit of its provisions, since he is a commissioned officer below the rank of brigadier-general. There is no exception of retired officers either in that section or in section 7 of the act of 1878, June 18, ch. 263, which extends its benefits so as to include service as officers in the volunteer forces during the war of the rebellion, or as enlisted men in the armies of the United States.
The defendants cite a passage from Roberts's Case (10 C. Ols. R., 283) which seems to be in conflict with these views, freely admitting, however, that it was a mere dictum not applicable to the point then in controversy.
The only question involved in that case was whether or not the pay of the claimant, as a retired officer with the rank of lieutenant-colonel, was limited to three-fourths of $4,000, by force of the Act 1870, July 15 (16 Stat. L., 320, ch. 294, § 24, now Rev. Stat., § 1267), when but for that section it would have been three-fourths of $4,200 underthe general provision for longevity pay. We. held then, as we now hold, that the pay of a retired officer is to be determined by first ascertaining what would have been his pay had he not been retired, and then allowing him seventy-five per cent, of that sum. The section which the claimant sought to avoid the force of limited the pay of a lieutenant-colonel to $4,000; and we held that it was a limitation upon the amount of the full pay of a lieutenant-colonel under the general provisions, of which he, as a retired officer, could receive only seventy-five per cent.
We then inadvertently said that the seventy-five per cent, was computed upon the pay which officers were receiving at the time they were placed on the retired list. This language happened to be used because in that case the result was the same as it would have been under the construction now given, and both parties had made their computation with reference to that period of time. The questions now raised were not then in con *237 troversy, and were neither argued nor alluded to in the brief, and were not considered by the court.
There remains one other question which, although of less importance than those which we have been considering, has been raised, and we must therefore pass upon. It relates to the manner of computing the ten per cent, longevity pay, and the meaning of the words “ current yearly pay ” in section 1262 of the Eevised Statutes. The defendants insist that the current yearly pay is the fixed annual pay, without the addition for longevity. Thus the pay of a captain not mounted is by section 1261 of the Eevised Statutes eighteen hundred dollars a year. For each term of five year’s service the defendants would add ten per cent, of that sum only, $180.
That is a convenient method of calculation, since it avoids fractions of dollars, and may have been adopted by the pay officers for that reason as it does not largely vary the result in any case. But it is not strictly accurate. Current yearly pay” implies a pay which is subject to change as the years run on. The expression is nowhere found in the statutes except in this connection. It evidently means ten per cent, of the whole pay the officer is receiving, or is entitled to receive, at the time he becomes entitled to an increase of pay. Thus for the first five years of service a captain unmounted receives $1,800; for the second five years, $1,980; for the third five years, $2,178; for the fourth five years, $2,395.80; and for the fifth five years it would be $2,635.38 but for section 1263, which limits the total amount of such increase not to exceed forty per centum of the “ yearly pay of the grade” as provided by law, which would reduce the latter sum to $ 2,520.
It is significant of the intention of Congress that in section 1263 the limitation of the total amount of increase for length of service is a percentage of forty per cent., not upon the “ current yearly pay,” upon which, by the next preceding section, the periodical increase is to be computed, but is upon the yearly pay of the grade”; thus making a distinction between current yearly pay ” and the unchanging “ yearly pay of the grade,” which we but adopt, follow, and apply with mathematical precision.
Eetired captains unmounted are entitled to three-fourths of those sums respectively, according to the length of their services.
*238 It follows that the claimant should have received—
After tea years’ service as commissioned officer, computed from May 25,1874, to June 18, 1878, 4 years and 24 days, at the rate of $1,633.50 a year. $6,642 90
After fifteen years’ service, computed from December 26, 1861, under the act of 1878, June 18, ch. 263, § 7, allowing his term of service as an enlisted man to be included, from the date of the passage of that act to May 15,1880, when this action was brought, 1 year 10 months and 27 days, at the rate of $1,796.85 a year..... 3,428 99
10,071 89
Having been allowed only.„. 8,868 75
He is entitled to judgment for the balance. 1,203 14
Judgment will be entered in favor of the claimant for the sum of $1,203.14.
HUNT, J., was absent by reason of illness when this case was tried, and -took no part in the decision.